NANCE v. UNITED FRUIT CO.

_____

(December 15, 1930.  Opinion and Decree.)

_____

Edward S. Spiro, of New Orleans, attorney for plaintiff, appellant.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. Plaintiff, the widow of a former employee of defendant, seeks to recover compensation for his death, claiming that he was killed by an accident arising out of and in the course of his employment.

The facts, which are in the main admitted, are: That the decedent was a member of the "shore gang" of defendant, which gang at that time was composed of himself and three other laborers and a foreman, a Mr. Whatley; that the "shore gang" had moved a large pump along the wharf to a spot alongside the steamship Cartago, belonging to defendant; that the pump was to be placed upon the Cartago, but was so heavy that a floating derrick had been sent for to perform this operation; that the derrick was delayed, and that during the delay the foreman, Whatley, ordered the four laborers of the "shore gang" to "stand by" so that, when the derrick should arrive, they might assist in raising the pump and lowering it into the hold of the ship; that decedent wandered off to another ship of defendant, the Suriname, lying some six or eight hundred feet down the river, and, in attempting to board this other ship, was precipitated into the water by the breaking of certain boards on which he attempted to cross the space intervening between the wharf and the ship, and that he was drowned in the river; that the boards, by means of which decedent attempted to board the Suriname, and which broke under his weight, were very near to the regular gangplank, and that, in order to reach the boards, decedent had passed by the regular gangplank; that, lying at the wharf between the Cartago and the Suriname, was another steamship belonging to another owner.

The defenses are that decedent voluntarily wandered away from his proper place of employment and was drowned while on his way to visit a friend in another steamship located at a distance of six or eight hundred feet away from the place at which he should have been, and that decedent voluntarily failed to use an adequate safety device, to-wit, the regular gangplank, and deliberately chose a very dangerous method of boarding the Suriname, to-wit, the use of small and manifestly inadequate boards, and that, thus, under section 28 of Act No. 20 of 1914, which is the statute under which this suit is brought, he could not recover, even if it could be held that the accident otherwise arose in the course of his employment. Section 28 reads in part as follows:

"He is further enacted, etc., That no compensation shall be allowed for an injury

caused * * * (3) by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him. * * *"

The evidence shows that, after giving to the "shore gang" the order to "stand by" to await the arrival of the derrick, Whatley, the foreman, boarded the Cartago, and that two of his gang also went on this vessel, though he did not know of the presence of the other two thereon. The Cartago was alongside the pump, and later on, when the derrick arrived, Whatley called his gang back to work. Three of them were present, but the fourth, decedent, had been drowned.

Plaintiff's counsel argues that it was not Whatley's intention that the four laborers should remain immediately alongside the pump, but that they, knowing that they could do nothing, were justified in seeking shelter from the cold air, or in seeking relaxation, as they saw fit, and that there was, thus, no reason why decedent should not have wandered over to the other steamship to visit a friend who was on that vessel. It is also argued that he may have gone to the other vessel to assist in doing other work of defendant company.

With regard to this last suggestion, we believe that the burden of proof is on plaintiff to show just what was the purpose of her husband in boarding the other vessel, and, in the absence of proof in this regard, we cannot presume the unusual, and cannot believe that he was voluntarily seeking work which he had not been ordered to perform.

It is quite true that Whatley testified that, in ordering the men to "stand by," he did not mean that they must wait alongside the pump for the derrick, but it is very evident that what he meant was that they must remain near enough so that they could hear him call them back to work. Surely decedent did not do this. He had gone more than two city blocks away from the scene of his employment. He had passed by and gone entirely beyond a ship belonging to another company, and by no stretch of the imagination can it be said he was hurt by an accident arising out of and in the course of his employment.

"The evidence further shows that he, the plaintiff, was not performing services arising out of and incidental to his employment, and that the accident did not happen in the course of his employment, trade, business, or occupation. The accident to plaintiff happened because of his neglect of the duties assigned to him and the unnecessary exposure by him to a very dangerous implement. It was his duty to have taken care of himself, and not to have placed himself unnecessarily in a place of danger. He had deserted his post of duty at the furnace, and wandered some distance from the boiler when he met with the accident." Pierre v. Barringer, 149 La. 71, 88 So. 691.

In Watson v. Holmes & Barnes, Ltd., 7 La. App. 210, we find that the syllabus reads as follows:

"The widow cannot recover under the Workmen's Compensation Act No. 20 of 1914 and amendments where employee was killed three hundred and seventy-three feet from the premises of his employer while he was on a personal errand and not in the course of his employment, and in disobedience to instructions given to him by his master."

See, also, Piske v. Brooklyn Cooperage Company, 143 La. 455, 78 So. 734.

In view of our conclusion that the accident did not arise in the course of the employment of decedent, it is unnecessary for us to consider the other contention made by defendant with regard to section 28 of the Compensation Act.

The judgment appealed from is affirmed.