### SNEAR v. EISERLOH.

No. 14180.

Court of Appeal of Louisiana. Orleans.

Nov. 14, 1932.

Johnston Armstrong, of New Orleans, for appellant.

Feitel & Feitel, of New Orleans, for appellee.

JANVIER, J.

Plaintiff has appealed from a judgment rejecting his demand for compensation under the Employers' Liability Laws (Act No. 20 of 1914 as amended). He asserts that during the course of his employment there occurred an accident which arose out of the work, and that in the accident he sustained injuries to his hand which temporarily totally disabled him.

Defendant admits the employment and the occurrence of the accident, but denies that liability resulted, basing its denial on the following grounds:

First, that even if it be conceded that plaintiff had been employed to assist in loading motortrucks (as he alleged), and this is denied—defendant asserting that he was employed only to unload—such work is not within the protection of the compensation laws of this state. And

Second, that at the time of the accident plaintiff was not engaged in the performance of any service for which he had been employed—the unloading of a motortruck—but had voluntarily undertaken to assist in the loading of a truck, which loading formed no part of his duties; that he was thus in the legal position of the plaintiffs in the matter of Pierre v. Barringer, 149 La. 71, 88 So. 691, and in the case of Gooding v. Beauregard Laundry Co., Inc., 9 La. App. 392, 120 So. 507, in which cases injuries resulted to employees who voluntarily left the respective positions to which they had been assigned, and who were endeavoring to assist in other work with which their own duties were in no way concerned. In such case, it is true that no liability results in compensation, because, however commendable and praiseworthy it may be for an employee to voluntarily endeavor to assist in furthering the interest of his employer, the employer should be allowed to determine for himself which employee he will assign to each particular job and should not be called upon to make financial restitution for losses sustained by those who suffer, not as a result of the work which they are employed to do, but because they have left that work and have undertaken to do something else.

That work on or in connection with a motor-driven vehicle is a hazardous employment within the contemplation of the compensation laws has already been decided. It has several times been held that the driver of a motortruck is within the protection of these statutes, Haddad v. Commercial Motor Truck Co., 146 La. 897, 84 So. 197, 9 A. L. R. 1380; Labostrie v. Weber, 15 La. App. 241, 130 So. 885; Plick et al. v. Toye Bros. Auto & Taxicab Co., 13 La. App. 525, 127 So. 59; Beebe v. McKeithen Construction Co., 5 La. App. 179, but the applicability of the statutes to an employee engaged in loading or unloading a motor vehicle and in no way concerned with its operation had not been judicially discussed in this state, so far as we are able to ascertain, until there was presented to this court the case of Richardson v. Crescent Forwarding & Transportation Company, 17 La. App. 428, 135 So. 688. However, in that case, there was presented the exact question which we are now asked to decide, and we held that "a member of a crew of four men, who went

with the trucks for the purpose of loading and unloading the freight from them, * * *" is within the coverage of the statute. Inasmuch as the Supreme Court refused to grant a writ of review in this case, and because we are of the same opinion still, we cannot sustain defendant's first contention.

In support of the second defense, it is argued that plaintiff was employed solely to unload trucks and that he was not required to load them. It appears that loading a truck with the particular commodity involved here (coffee) requires more labor and skill than does unloading, and that therefore a different class of labor is employed for the one than that which is used for the other.

Whether the evidence warrants a finding that plaintiff, in assisting in loading the truck, had stepped outside the lines of his duty and had thus unnecessarily increased the danger of his work, we find it very difficult to determine; but we have decided that, however the evidence may preponderate on that question of fact, defendant is liable and for these reasons.

Defendant's son and foreman testified that he was standing immediately alongside plaintiff at the time of the accident. If plaintiff was assisting in the loading of the truck, then the foreman by permitting him to do so made it a part of his duties, at least so far as the compensation laws are concerned, and defendant can no longer be heard to say that loading was not a part of plaintiff's work.

But if, on the other hand, plaintiff was not assisting in the loading, but was merely standing idly by waiting for the truck to be loaded so that he might continue on his journey to the place at which his actual labors were to commence, then during that time he (plaintiff) was within the benevolent protection of the statute, for if the statement of defendant's foreman be true in all particulars, we find that plaintiff was employed at one point to ride in defendant's truck to a second point at which the truck was to be loaded and then to a third point at which the plaintiff was to perform his labor of unloading and that while the truck was at the point at which it was being loaded, plaintiff, while standing nearby doing nothing, was injured as a result of the falling of a pile of coffee sacks. During the course of that entire trip plaintiff was under the coverage of the Compensation Law to the extent that any accident which might have occurred would have been considered as having taken place "in the course of" the employment.

"An accident occurs in the course of an employment when it takes place during the time of such employment." Kern v. Southport Mill, 174 La. 432, 141 So. 19, 21. See, also, Sellers v. Louisiana Sawmill Company, Inc., 8 La. App. 779, and the following cases there-

in cited: Wilson v. Banner Lumber Co., 108 La. 590, 32 So. 460; Lawton v. Pacific Coast Casualty Co., 144 La. 664, 81 So. 219; Farris v. La. Long Leaf Lumber Co. et al., 148 La. 106, 86 So. 670; Prevost v. Gheens Realty Co., 151 La. 508, 92 So. 38.

If, then, injury received by an employee while traveling to and from his home in his employer's conveyance can, in certain cases, be said to arise in the course of the employment, it is evident that injuries received during working hours and during the course of being transported from one place of employment to another are plainly received "during the course of the employment."

But, it is not sufficient that the accident occur in the course of the employment, it must also arise "out of it," and, as our Supreme Court said in Kern v. Southport Mills, supra, by that is meant "that the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed."

If plaintiff, by assisting in the loading, had increased the danger to which he was exposed, or if the accident in which he was injured had been caused by his action while loading, then it might well be said that voluntarily assisting in the loading had some causal connection with the injury. But, as we have said, if the foreman's statement be true, plaintiff was standing alongside him and was doing nothing. Thus plaintiff was injured in an accident, with the cause of which he was in no way concerned, and while he was in a place in which he had a right to be and in the course of his employment. It follows that since the interests of his employer's business required him to be at the place of the accident at the time it occurred, the accident arose out of the employment.

Surely, it cannot be said that since plaintiff had no concern with the loading of the truck he should have remained on it during that process and should not have alighted therefrom. He was within his rights in dismounting and passing the time at any reasonable occupation not obviously more dangerous than was necessary. What matters it then if he assisted at times in loading, since that occupation, even though it involved more danger than standing idly by, did not, as it happens in this case, cause the accident? Suppose he had remained on the seat of the truck and a pile of coffee sacks near by had fallen and injured him, manifestly he could have recovered. Why then should he not recover here?

In Sellers v. Louisiana Sawmill Co., supra, it was held, as we have shown, that injuries received during the course of transportation to and from work, on a vehicle furnished by the employer, arose out of and during the course of employment. There the employee had temporarily alighted from a caboose of a train during a stop. The court, holding that this did not alter the situation, said:

"The stopping, getting out and getting back into the caboose was all under the facts and circumstances, an incident and risk of the employment."

The facts here bring this matter squarely within that doctrine. We believe that the judgment rejecting plaintiff's demand was erroneous and that it should be reversed.

We find it very difficult to determine just what average weekly wage plaintiff was earning, but we do find that on the day on which he was injured he received $1.20. In the absence of evidence to the contrary and because, without countervailing proof, we believe that there is sufficient evidence in the record to warrant the belief that this was the average daily wage, we find that the plaintiff's average weekly wage was $7.20. He is entitled to 65 per cent. of this amount for twenty-four weeks, the period of his disability. This is $112.32. His medical expenses, and there is no contradiction of the correctness of this item, amounted to $100. He is thus entitled to a judgment for $212.32.

In his brief counsel for plaintiff asks that we award his client interest at 5 per cent. from their respective due dates on such weekly payments as we may conclude that he is entitled to. But we do not find that he has asked for interest in the petition and, therefore, it cannot be allowed.

In Dennis v. Huber, 151 La. 589, 92 So. 126, 127, the Supreme Court said:

"Plaintiff asks that he be allowed 5 per cent. per annum interest on the weekly installments from maturity until paid. In his petition he has neither alleged that interest is due nor has he prayed for it. Unless interest be claimed expressly in the trial court, it cannot be allowed. C. P. arts. 157, 553; McIntyre v. Hall, 20 La. Ann. 217."

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff, Joseph Snear, and against defendant, B. Eiserloh, in the sum of $212.32, and for all costs.

Judgment reversed.