ELLIS, Judge.
Plaintiff filed this suit for workmen’s compensation benefits as the result of an injury sustained after working hours while fixing a flat tire on his automobile on December 22, 1964. The defendant answered plaintiff’s petition, in effect denying that the accident complained of arose during the course of plaintiff’s employment nor was it in the scope of his employment. In the District Court, due to the nature of the case, there was primarily a question of law involved and the parties stipulated to the facts. Based upon this stipulation of facts the lower court, in written reasons for judgment, rendered judgment rejecting the plaintiff’s demands, and from this judgment the plaintiff perfected a devolutive appeal to this court.
The facts stipulated, upon which the lower court relied, are as follows:
“It is stipulated and agreed that if the sworn testimony of witnesses were taken and documentary proof introduced in the above entitled and numbered cause, the following facts would thereby be established. It is further stipulated and agreed that this stipulation of facts contains all facts relevant and material to this case, and therefore that no further evidence need be adduced upon the trial of this case. The facts of this case are stipulated to be:
“Plaintiff, Alvin K. Bates, (hereinafter referred to as plaintiff) is a resident of lawful age of the Parish of East Baton Rouge, Louisiana.
'“Defendant, Gulf States Utilities Company, (hereinafter referred to as defendant) is a foreign corporation authorized to do and doing business in the State -of Louisiana, who was properly served in this action through one of its registered agents
“Plaintiff was employed by defendant on -or- about May 28, 1956, and continued in its employ through December 22, 1964. He was employed to do strenuous, heavy work, heavy lifting and digging and operations relative to the installation of gas lines, which work forms a part of the regular trade, business or occupation of defendant.
“On December 22, 1964, plaintiff was working at a job site near the Airline Highway installing and readjusting a gas line. Plaintiff left the job site by means of transportation furnished by defendant at approximately 4:05 o’clock P.M. and was returned to defendant’s premises at approximately 4:25 o’clock P.M.
“Defendant’s premises are located on Choctaw Drive within the City of Baton Rouge. Choctaw Drive is a major thoroughfare which traverses the City of Baton Rouge from East to West. Defendant’s premises consists of a parcel of land surrounded by a fence which encloses several buildings and a parking lot used for defendant’s vehicles and for the vehicles of its employees who choose to drive .their own automobiles to work. Defendant’s premises are serviced by a city bus line. A detailed map of defendant’s premises is annexed hereto and made a part hereof by reference.
“Upon re-entering defendant’s premises, plaintiff and the remainder of his crew debarked from their crew truck at the Tool House. After checking through the locker room in the Gas Service Building, plaintiff was released from further duty for the day at 4:30 o’clock P.M., which was the regularly scheduled time for plaintiff and his fellow employees to be dismissed for the day. He was then allowed to leave defendant’s premises by whatever means he desired. Plaintiff proceeded to his own automobile which was parked in the Employee’s Parking Area on defendant’s premises adjacent to Choctaw Drive. Plaintiff had the intention of driving his automobile home.
“Upon reaching his automobile, plaintiff discovered that his right rear tire was flat. He then removed the tire from his *897 automobile; and while still in the Employee’s Parking Area near his automobile, he repaired his flat tire.
"As part of the facilities located on its premises which includes the Employee’s Parking Area, defendant maintains a Garage for the repair and maintenance of defendant’s vehicles. After completing his repair of the tire, plaintiff rolled his tire to the Garage and into an area of that building known as the lubritorium. This area is primarily used to lubricate defendant’s trucks. He did not use defendant’s tire repair room which contained equipment to fasten down a tire while it was being repaired.
“Plaintiff was never required to use the facilities of the Garage while engaged in the activities which he was hired to perform for the defendant. Additionally, he was not hired to perform, was never assigned, nor did he ever perform any duties relating to the repair and mainteance of vehicles.
“Using defendant’s air compressor and hose located in the lubritorium, plaintiff began to inflate his tire. During the course of this undertaking, plaintiff was struck on or about the upper part of his body and face by the tire and/or rim when his tire exploded against the floor, propelling its wheel into the air striking plaintiff and causing him serious and disabling injuries.
“Plaintiff did not seek permission from or assistance of any of the three employees of defendant who were on duty in the Garage at the time of the accident. These employees were not aware of plaintiff’s presence in the building until after the accident.
“On the date on which the injury occurred, the business in which the defendant was engaged was considered hazardous under the compensation laws of the State of Louisiana as were the regular duties performed by plaintiff.
“Supervisory personnel of the defendant became aware of this accident immediately and did render assistance at the scene to the plaintiff and defendant was therefore duly notified of this accident shortly thereafter.
“Plaintiff’s injuries were diagnosed and treated as follows: Multiple fractures of his facial bones; compound fracture of the proximal end of the left ulna; fracture of the mid portion of the left radius and ulna; and a fracture of the distal portion of the left radius. There were also some small avulsion fractures of the carpal bones on the left side; and compound fractures of the distal in-terphalangeal joints of the ring and middle fingers. Surgery was performed and the patient was placed in a long arm cast. A tracheostomy was also performed.
“As a result of the injuries sustained in the accident complained of plaintiff is totally disabled up to the present time, and will be for an undetermined future time.
“Defendant has refused to pay petitioner any compensation notwithstanding amicable demand but has paid plaintiff an amount equal to his regular wages for a period of ten (10) weeks through March 8, 1965, under an informal employee sickness and benefit procedure, voluntarily followed by defendant in most cases.
“Plaintiff has incurred medical expenses to date and will incur additional medical expenses in the future.
“During the time plaintiff was employed by defendant, his weekly wages were such that sixty-five per cent (65'%) thereof amounted to Thirty-five and No/100 Dollars ($35.00) per week or more.
“Plaintiff and defendant through respective counsel agree and stipulate that the only issue before the court in this matter is whether the plaintiff received personal injuries by an accident arising out of and *898 in the course and scope of his employment, and both counsel agree to submit argument and briefs on this point of law and to keep the record free of any matter which would not be relevant to this issue.”
The primary issue in this particular case is founded upon the first paragraph of LSA-R.S. 23:1031, which we quote as follows:
"If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.”
The plaintiff contends that the lower court erred in relying on the case of Loftin v. Woodhatch, La.App., 26 So.2d 704. In that particular case the employee’s mother filed suit for his death under workmen’s compensation. The deceased employee’s principle duties were to help attend a gas station, repair flat tires and other things of that nature. He was hired as a filling station helper and not as a mechanic. The deceased was working under the direction of his uncle who was in charge of the night shift of the filling station. On the night of the accident he had requested that his uncle permit him to repair his uncle’s car approximately an hour and one-half before they were to leave work. While engaged in repairing his uncle’s car in the garage portion of the defendant’s premises, the automobile fell off the jacks and crushed plaintiff’s son to death.
The court found that the deceased was not working for the defendant when he met with the fatal accident. Therefore, he was not killed by an accident arising out of and within the scope of his employment.
In discussing the problem of whether an employee was injured during the course of his employment, Professor Wex S. Malone in his treatise entitled Louisiana Workmen’s Compensation Law and Practice, discusses certain phases of this problem in Section 163, a portion of which we quote as follows:
“An accident that happens while an employee is actively engaged in the performance of his duties during working hours will be regarded as having occurred in the course of his employment. It is immaterial that the work being done at the time of the accident was not within the scope of the specific job for which he was hired, so long as it was being performed pursuant to the orders of his superior. Even if no order was given, it is enough that the special job was undertaken pursuant to custom in the establishment or was knowingly accepted without objection by those in authority.
“Likewise, if an employee was following orders or was performing his duties it is immaterial that the accident occurred at some place distant from the employer’s premises. Furthermore, the employee is protected not only while he is actively at work but likewise while he is going directly from one place of work to another, or returning to his employer’s premises. “Similarly, if the accident occurred before the beginning of working hours or after the close of the regular day’s work, it nevertheless falls within the protection of the Act if the employee was acting pursuant to orders or was doing his employer’s work under such circumstances that the latter’s consent would be fairly implied.
“It follows from the foregoing that if an employee is expected to perform some definite task for his employer after arriving at his home at the close of the day’s work, he is entitled to compensation if he meets with an accident on the way home. This is an exception to the well recognized rule that an employe» who is injured while going to or coming from work is not within the course of his employment. Similarly, an employee who is charged with a duty to perform en route to his home is acting within the *899 course of his employment while proceeding homeward up until he has discharged this task, but presumably not thereafter.” (Emphasis ours.)
Thus, an injured employee might recover under the workmen’s compensation act if the accident and resulting injury occurred during the time the employee was acting pursuant to orders, or was doing some phase of his employer’s work under such circumstances as could be construed as implied consent.
If these facts were true, it would be possible to find that the plaintiff was acting within the course of his employment. We do not, however, find any custom, or orders of his employer that would demand that the plaintiff fix any tires, much less his own tires, in the defendant’s garage as was stipulated to by counsel.
In dealing with the closely related question of whether a specific set of facts "arise out of the employment” we find the test, which can be used as a guide line, although it is not a hard and fast rule, set forth in the case of Kern v. Southport Mill, 174 La. 432, 141 So. 19.
In that case the Supreme Court used this language as a guide line to determine whether an accident “arose out of the employment”, the particular portion we refer to and quote as follows:
“In determining, therefore, whether an accident ‘arose out of’ the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer’s business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer’s business reasonably require that the employee be at the place of the accident at the time the accident occurred?”
In reviewing the facts stipulated to by the counsel, we find nothing in the stipulation of facts showing that the plaintiff was reasonably required to change flats or do any automobile repair work. The plaintiff was employed to do strenuous, heavy work, in lifting and digging operations. We also find that the plaintiff never was required to use facilities of the defendant’s garage while engaged in the activities in which he was hired to perform for the defendant. It was also stipulated that he was never assigned nor did he ever perform any duties related to the repair maintenance of vehicles.
We therefore find that the plaintiff was not engaged about his employer’s business but was merely pursuing his own private business changing the tire on his own private automobile. Under the facts stipulated to, particularly the portions which we have referred to above, we cannot find the employee’s business reasonably required the plaintiff to be at the place of the accident at the time the accident occurred.
The plaintiff cites several Texas cases, which we find inapplicable.
The primary case which plaintiff relies on is the case of Baker v. Texas Pipe Line Co., 5 La.App. 25 (2 Cir. 1926). Under the facts in this case, plaintiff had finished a day’s work and was injured on the premises of the employer. The plaintiff slipped and fell off of a truck or was knocked off the truck by his body coming in contact with a gate post as it was leaving the employer’s premises. The plaintiff had alleged that the truck was furnished by his employer, but this was denied in the answer. The lower court rejected the plaintiff’s demands, but on appeal the appellate court found that the plaintiff was leaving his employer’s premises at the close of the day’s work and that the entrance where he was hurt was one commonly used by the defendant’s employees in leaving the premises, whether walking or riding, and held “that if an employee is injured on the premises of the employer in going to and from work he is entitled to compensation”. The court did not go into the question of whether the transportation was furnished by the defendant or not but found that plaintiff did not delay in leaving the premises and re *900 versed the lower court. This case is not controlling. Although plaintiff was injured on the employer’s premises he was “neither going to or from work”.
Considering the particular facts in the case at bar, and for the reasons hereinabove assigned, we find no error in the judgment of the lower court and it is therefore affirmed.
Affirmed.